# CHARLESTON.

## WAGNER *v.* COEN *et al.*

Submited September 9, 1895—Decided Nov. 29, 1895.

1. RECEIVER—ASSIGNEE FOR CREDITORS.

Where an assignment or conveyance is made by an insolvent firm to a trustee of the assets of the firm for the payment of the claims of creditors, and it is made to appear in a proper suit in equity that there is danger of the loss or misappropriation of the same, or of a material part thereof, such court may appoint a special receiver of such property, and cause the same to be admin-istered by the receiver under its direction.

2. TRUSTEE FOR CREDITORS—TRUST FUNDS.

It is the duty, among other things, of such trustee or assignee, to keep the property and fund thus intrusted to him separate and distinct from his individual funds. He should, when it can be done without inconvenience, deposit the money in bank, or in some like place for safe keeping; and it should be deposited in a separate account in his name as trustee or assignee, so that the fund may at all times be capable of being traced and identified, and the true state of such money account be capable of ready as-certainment.

3. TRUSTEE FOR CREDITORS—MISCONDUCT.

When the trustee or assignee violates this duty to the injury, or the great risk of injury, to those who may be ultimately entitled to the fund, or wastes or misappropriates the fund or a material part thereof, or it is made to appear that there is danger of misappropriation or of loss, from any misconduct of such trustee or his agents, of a material part of such trust property, such court may and should appoint a special receiver thereof, and cause him to duly administer the same under its direction.

4. RECEIVER—APPEALABLE DECREE.

Where such is the sole purpose of the suit, and the court, by the permanent appointment of such special receiver, adjudicates the principles of the cause, the decree is appealable, though the possession and administration of personal property alone be involved.

A case in which these principles are discussed and applied.

J. B. SOMMERVILLE for appellant, cited 24 W. Va. 279; 1 Bart. Ch. Prac. 481, 483; Story's Equity, § 831; 14 S. E. Rep. 806; 14 S. E. Rep. 5.

T. M. GARVIN for appellee, cited 26 W. Va. 755, 782; 1 Bart. Ch. Prac. 482, 483, 485, 506, 507; 2 Story, Eq. Juris. §§ 829, 831, 1037; 10 Ga. 282; 1 Story, Eq. Juris. § 190; High, Receivers, §§ 11, 14, 25, 26, 86, 412, 738; 32 W. Va. 34; 20 Am. & Eng. Enc. Law, 51, note; 10 W. Va. 420; 1 Am. & Eng. Enc. Law, 880, note; 97 N. Y. 105; 14 S. E. Rep. 106; 29 W. Va. 344; 20 Am. & Eng. Enc. Law, 47, note 2; 20 Id. sub. sec. 2, notes 1, 2, 3; 20 Id. 305, sub. sec. b. of sec. 4; 11 Md. 459; 20 S. E. Rep. 318; 3 Pom. Eq. Juris. § 1334; 25 S. C. 436; 2 Dan'l, Ch. Pl. & Prac. § 1736; 2 Pom. Eq. Juris. § 1086; 1 Am. & Eng. Enc. Law, 878; 70 Ga. 312; 7 Paige (N. Y.) 37; 26 W. Va. 601; 27 W. Va. 435; 40 Ga. 375; 42 Ga. 46; 20 Am. & Eng. Enc. Law, 107, notes 3, 4, 5; 15 W. Va. 810.

HOLT, PRESIDENT:

On appeal from decree of the Circuit Court of Ohio county, entered on the 13th day of May, 1894, appointing A. A. Franzheim, sheriff of Ohio county, receiver to take charge of the property of Kerr & Coen, and turn the same into money, and the decree entered on the 17th day of September, 1894, overruling a motion to set aside said order of appointment.

The facts are these: John Kerr, J. E. C. Coen, and C. L. Coen were partners, doing business as partners in the sale of furniture, *etc.*, in the city of Wheeling, and becoming financially embarrassed, by deed dated the 16th day of February, 1894, made an assignment of all their property then in their place of business in the city of Wheeling, and all their assets of every kind anywhere, to Charles M. Coen, as assignee, in trust for the creditors of the firm, to be paid ratably, without any preference or priority, and the net residue, if any, to be paid over to the firm. The assignee at once took charge, having given bond, and proceeded to wind up the affairs of the concern. Thereupon Edward Wagner, a creditor of the firm to the amount of some two hundred and fifty dollars, as he claimed, filed his bill on the 23d day of June, 1894, wherein he charged the trustee with a violation of his trusts, in that he was paying certain creditors named in full, giving them a preference, misappropriating the funds, buying goods with the money collected, and selling goods on time, without knowing that he would be able to collect the same, and keeping no proper account of his doings as trustee, praying for the appointment of the sheriff as receiver, *etc.*

The trustee answered, denying some of the charges, admitting some, and justifying his paying certain claims in full by the averment that he and his brother were the heavy creditors, and that they intended to take nothing until all the other creditors had been paid in full.

Many affidavits were read *pro* and *con*, and among them the affidavit of J. R. Moise, who had been over the books of the trustee, and had inspected his accounts, and ascertained his method of keeping his accounts and of transacting the business. His affidavit, not contradicted, reads as follows: "Wheeling, W. Va., July 27, 1894. A. A. Franzheim, Esq., Special Receiver—Dear Sir: I have made an examination of the accounts of Mr. C. M. Coen, assignee of Kerr & Coen, and have the following report to make: The system for keeping his cash account, adopted by the assignee, was entirely irregular, and it was almost an impossibility to determine what disposition had been made of funds that came into his hands; and, while I have no doubt that all moneys

were faithfully accounted for, yet the manner of disposition was faulty and erroneous. Every cent received from parties indebted to the firm should have been turned over to the assignee, and charged to him, and he should have opened an account in bank as assignee, and, as assignee, should have checked against this account for the smallest payment made. Instead of this, Mr. Coen deposited such moneys as he received to his individual credit and in his private bank account, thus making it impossible to separate the one from the other, or to balance his bank account, as not one single check appears signed in his capacity as assignee, but all alike his individual checks, and those pertaining to his assigneeship bear only the private signature of C. M. Coen. Something over two thousand dollars have been paid into the hands of the assignee, and the disposition made by him of the funds was not such as it should have been, as will be shown by the comparative statements herewith presented of the condition of the affairs of Kerr & Coen at the time of the assignment, February 24, 1894, and at the time of the appointment as receiver, about the 20th July; for instance, at time of assignment the books of Kerr & Coen showed that they were indebted to their various creditors in an aggregate sum of one thousand, nine hundred and ninety dollars and seventy cents, and, although the assignee has received over two thousand dollars, their indebtedness today is one thousand eight hundred and six dollars, showing a reduction of only one hundred and eighty four dollars and eighty six cents. I will, further on, account for the existence of this state of things. At time of assignment, inventory showed one thousand, six hundred and fifty two dollars and thirty eight cents worth of merchandise on hand, while to-day a careful appraisement shows only four hundred and eight dollars and eighty two cents worth of merchandise—a shrinkage of one thousand, two hundred and forty three dollars and fifty six cents— notwithstanding the fact that nearly five hundred dollars worth of goods have been purchased by assignee during his holding.''

The trust arising under general assignment for the benefit of creditors is peculiarly and exclusively an object of eq-

uitable jurisdiction (*McFerran* v. *Davis*, 70 Ga. 661); and creditors may compel a proper management of the trust by the assignee (*Crouse* v. *Frothingham*, 97 N. Y. 105; *Cohen* v. *Morris*, 70 Ga. 313; *Windham* v. *Patty*, 62 Tex. 490; 1 Am. & Eng. Enc. Law, 880). Among the duties of the assignee, experience has shown that none is more important than keeping proper accounts of his doings—keeping his transactions as assignee wholly separate and distinct from his own private affairs. The obvious importance—the indispensability—of such requirement, at this day, needs no comment. How, otherwise, are we to know or can we find out what has been done, what is being done, or have any means of ascertaining for any purpose the status of the trust fund ? The assignee is a *quasi* receiver of the debtor's selection and appointment, whose plain duty it is to receive, gather in, collect, turn into money, and take care of, the trust property, faithfully, without partiality or favor to any one, and for the benefit of all creditors and other parties in interest; and, *inter alia*, it is his duty to keep the fund entrusted to him entirely separate and distinct from his individual funds. He should deposit the money in bank for safe keeping, and it should be deposited to a separate account, in his name as trustee or assignee, so that the fund may at all times be traced and identified, and the true state of his money account as trustee be capable of ready ascertainment; and when the trustee violates this duty, to the injury, or great risk of injury, to those entitled to the fund, he is guilty of a breach of trust, for which the court of original jurisdiction may, in the exercise of a sound discretion, take the trust fund out of his hands, and put it into the hands of a receiver or person specially appointed for that purpose. See High, Rec. § 803. In this day of commercial enterprise, it is indispensable that he keep his accounts correctly, so that the parties in interest may be able to ascertain their rights depending on the state of the fund, and act understandingly in the premises. See Burrill, Assignm. (6th Ed.) § 403.

I do not deem it necessary to go into detail in considering the twenty affidavits filed and read on the hearing. There is no doubt that plaintiff is a creditor, who will ulti-

mately be entitled to his debt. It is sufficient to say that it was so far made to appear that there was danger of the loss or misappropriation of the property assigned by the insolvent firm as to justify the appointment of a special receiver to take it in hand, and dispose of it under the direction of the court. See Code 1891, p. 845, c. 133, s. 28. And this, not from any dishonest purpose on the part of the trustee, for there is no evidence of that anywhere in this record, but because the trustee was overconfident in what he expected to be realized, and instead of paying dividends, was pursuing the unusual course of settling claims in full with the assets belonging to the fund, as an easy and convenient method of winding up the affairs of the partnership, and which has sometimes the advantage of making the assets go much further in payment of the debts, but, unless carried on with the consent of the creditors, will end —where we now find this case—in contentious litigation. In making such appointment, the court must exercise a sound discretion, in view of the whole circumstances of the case: but it is made for the benefit of those who may be ultimately found to be entitled, and the court in no manner anticipates its final judgment upon the rights of the parties.

Is the decree an appealable one? If it were real estate the possession whereof was thus required to be changed, there could be no question, for it would then be within the language of the statute. Code, c. 145, s. 1, cl. 7; *Hutton* v. *Lockridge*, 27 W. Va. 428. Here the order divests the trustee of the title and possession of the property over which he had exclusive control, and transfers the trusts into new hands for execution. To appoint, or refuse to appoint receivers, is a discretionary power, which will not be interferred with on appeal, except in cases where the discretion has been manifestly abused. Such is the general rule. See 5 Thomp. Corps. § 682. This would seem to bring it within the reason of the statute on the same ground as if it were real estate, but not within the letter on that ground, for the change of possession seems to relate to real estate alone. In this case the bill charges that there has been a misappropriation by the trustee of a material part of the

property assigned to him, by his giving priority and pref-
erence to certain creditors named, of the firm of Kerr &
Coen, who made the assignment, and to the exclusion and
prejudice of plaintiff and other creditors, and that for rea-
sons, such as selling the assets on credit, there is also dan-
ger of loss of a material part.  On this ground the plaintiff
asks that the sheriff be appointed a special receiver of the
property in question, that he may dispose of the same, that
the claims of the creditors may be ascertained, and distri-
bution be made, according to the rights under the deed of
assignment; in other words, that for cause shown, the court
may take the trust property out of the hands of the trustee,
and administer the same through its special receiver.  That
is the sole ground of the bill, and the only relief prayed for,
and when that is granted, and then, on full hearing, the
court refuses to restore the property to the trustee to be
controlled and administered, has it not adjudicated the
principles of the cause?  In all else the directions of the
deed of assignment are to be followed, and about that there
is no controversy.

In such a case, I think, the decree complained of must be
regarded as within both the reason and letter of the statute,
and therefore, in this particular case, appealable; but, for
reasons already given, it must be affirmed.